JDN

1

2   **WO**

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Ronald M. Feldmeier,                      No.  CV 13-2027-PHX-DGC (BSB)

10                      Plaintiff,

11   vs.                                        **ORDER**

12   P. Hauser, et al.

13                      Defendants.

14

15          Plaintiff Ronald M. Feldmeier brought this pro se civil rights action under 42

16   U.S.C. § 1983 against P. Hauser and R. Williams, officers at the La Palma Correctional

17   Center (LPCC) in Eloy, Arizona (Doc. 1).[1]  Before the Court is Defendants' Motion for

18   Summary Judgment, which argues that Feldmeier failed to exhaust administrative

19   remedies (Doc. 22).  The Court will grant the motion and terminate the action.

20   **I.     Background**

21          Feldmeier alleged that Defendants violated his Eighth Amendment rights when

22   they failed to protect him from an assault by his cell mate (Doc. 1).  In his Complaint,

23   Feldmeier set forth the following factual allegations:

24          In July 2011, Feldmeier was assigned a new cell mate, Wilson, who exhibited

25   anger and hostility and threatened Feldmeier.  Wilson was twice Feldmeier's strength and

26   half his age.  Feldmeier spoke to Hauser and requested that either he or Wilson be moved.

27   _____

28          [1] La Palma Correctional Center is owned and operated by Corrections Corporation
     of America (CCA) (Doc. 1 at 1).

1   In response, Hauser advised Feldmeier to let him know if the problem worsened.

2       Wilson's intimidation and threats continued and, in September 2011, he threatened
3   to kill Feldmeier.  When Feldmeier told Hauser of the threat, Hauser responded that he
4   was too busy and sent Feldmeier away.  Feldmeier then met with Williams, who
5   instructed Feldmeier to put his complaint in writing, and, on September 22, 2011,
6   Feldmeier gave his written complaint to Hauser for delivery to Williams.

7       During the next two days, Wilson's behavior worsened, and Feldmeier told Hauser
8   and inquired about a response to his complaint and a cell change.  Hauser told Feldmeier
9   that there was no response and no cell change would occur that day.

10      On September 26, 2011, Feldmeier told Hauser he was afraid and that Wilson's
11  threats were escalating, and he again requested a new cell for either him or Wilson.
12  Feldmeier saw his written complaint on Hauser's desk; Feldmeier informed him that
13  Williams had tasked Hauser with handling the problem.  Hauser stated that he would look
14  into the request for a new cell, but that no cells were available.  Feldmeier then asked to
15  switch cells with any other inmate, to which Hauser did not respond.

16      On two more occasions, Feldmeier attempted to speak with Hauser about the
17  issue, but Hauser refused to speak to him because he said he was too busy.

18      On October 5, 2011, Wilson attacked Feldmeier when Feldmeier was lying on his
19  bed.  The attack lasted between 10 and 20 minutes.  During the beating, Feldmeier tried
20  to summon help via the in-cell emergency call box, but there was no response.  Feldmeier
21  was beaten until he was unconscious.  He suffered a concussion, fractured eye
22  orbit/cheekbone, fractured nasal bones and septal cartilage, deformation of the nose and
23  eye orbit, lacerations, contusions, abrasions, hearing loss, headaches/sinus pains, vertigo,
24  sleep loss, memory problems, rib fractures, dorsal/lumbar spinal subluxations, and right
25  wrist and forearm tissue and muscle damage.

26      Feldmeier sued for compensatory and punitive damages and unspecified
27  declaratory relief.

28

On June 13, 2014, Defendants filed their Motion for Summary Judgment, arguing the Feldmeier failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. 22).[2]

## II.    Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968), but it must "come forward with specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *Anderson*,

---

[2] The Court issued an Order pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which informed Feldmeier of the summary judgment requirements under Federal Rule of Civil Procedure 56 (Doc. 24).

477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

**III.   Exhaustion**

**A.   Governing Standard**

Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing an action in federal court.  *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005).  The prisoner must complete the administrative review process in accordance with the applicable rules.  *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it.  *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process).  Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.  The ultimate burden rests with the defendant.  *Id.*  Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust.  *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).  If a court concludes that a prisoner failed to exhaust, the proper remedy is dismissal without prejudice.  *See Jones v. Bock*, 549 U.S. 199, 223-24 (2007); *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

1    If summary judgment is denied, disputed factual questions relevant to exhaustion

2    should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of

3    exhaustion.  *Albino*, 747 F.3d at 1170-71.  But if a court finds that the prisoner exhausted

4    administrative remedies, that administrative remedies were not available, or that the

5    failure to exhaust administrative remedies should be excused, the case proceeds to the

6    merits.  *Id.* at 1171.

7    **B.    Applicable Grievance Procedure**

8    Feldmeier is a California Department of Corrections and Rehabilitation (CDCR)

9    inmate; therefore, the applicable administrative procedures are set forth in Title 15 of the

10   California Code of Regulations, § 3084.  CDCR regulations allow a prisoner to appeal

11   any action or decision by a prison official that adversely affects the prisoner's welfare.

12   Cal. Code Regs. tit. 15, § 3084.1(a).  Prior to January 28, 2011, a prisoner had to pursue

13   an appeal through four levels, one "informal" and three "formal."  *Manning v. Bunnell*,

14   No. 2:12-CV-2440, 2014 WL 1338312, at *2 (E.D. Cal. Apr. 2, 2014).  The CDCR's

15   administrative exhaustion procedure was modified by amendment on December 13, 2010,

16   becoming effective on January 28, 2011.  *See id.*, at *3.  In order to exhaust available

17   administrative remedies within the current system, a prisoner must proceed through three

18   levels: (1) an inmate submits an appeal on Form 602 to the appeals coordinator at the

19   institution for processing and receives a first formal-level decision, unless the first level is

20   exempted by the appeals coordinator; (2) if relief is not granted at the first level, the

21   inmate must file an appeal and receive a second formal-level decision; and (3) if relief is

22   not granted at the second level, the inmate must file an appeal and receive a third level

23   decision from the Appeals Chief.  *See* Cal. Code Regs. tit. 15, §§ 3084.2(a)-(d), 3084.7.

24   A final review and decision by the Chief of the Office of Appeals, also known as the

25   "third level" appeal, exhausts the inmate's administrative remedies.  *See id.*,

26   § 3084.7(d)(3).

27   CDCR regulations require a prisoner to describe "the specific issue under appeal

28   and the relief requested."  *Id.*, § 3084.2(a).  The prisoner is also required to list "all staff

- 5 -

member(s) involved and . . . their involvement in the issue" or provide any available information that would assist in identifying the staff members involved. *Id.*, § 3084.2(a)(3).

The parties dispute whether an informal Form 22 must be submitted before proceeding with the 602 process described above.

The record includes a copy of part of the LPCC Inmate Handbook, which was given to Feldmeier when he arrived at LPCC and which outlines the grievance/appeal procedures (Doc. 23, Defs.' Statement of Facts (DSOF) ¶¶ 23-24 & Ex. A-6; Doc. 26, Pl.'s Statement of Facts in Response to DSOF (PSFR) ¶¶ 23-24). Feldmeier points out that the "Grievance Procedure" section of the Inmate Handbook states that when inmates have a grievance, they "will have access to an informal process (CDCR Form 22) to resolve their complaints" (Doc. 23, Ex. A-6 (Doc. 23-1 at 52)). This section further states that "at any time the informal process has not provided successful resolution of the complaint or in the event of emergency grievance, CDCR inmates may use the CDCR 602 process" (*id.*). Despite this language, Defendants argue that the informal Form 22 was not part of the formal administrative grievance/appeal process and did not initiate the administrative grievance/appeal process (Doc. 28 at 2-3). According to Defendants, Feldmeier misinterprets the LPCC Inmate Handbook to support his claim that Form 22 was part of an informal grievance procedure (*id.* at 2).

The Court rejects Defendants' argument. The United States Supreme Court has held that a prison's own procedures define the contours of proper exhaustion. *Jones*, 549 U.S. at 218. A prisoner must comply with the "applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* (internal citation omitted). Further, when determining what administrative remedies are available, the Court looks at "official directives that explain the scope of the administrative review process" and "information provided to the prisoner concerning the operation of the grievance procedure . . . ." *Brown*, 422 F.3d at 937.

- 6 -

The most logical reading of the LPCC Inmate Handbook is that an inmate with a complaint initiates the grievance process by filing an informal Form 22, unless it is an emergency grievance.  Regardless of the amendment made to the CDCR regulations in 2011 that eliminated the informal step, because the LPCC Inmate Handbook directs prisoners to file the informal Form 22 before using the 602 process, the Court finds that the informal Form 22 initiates the grievance/appeal process.

### C.    Feldmeier's Attempt to Grieve

On September 22, 2011, Feldmeier completed a Form 22 (Doc. 23, Ex. A-9 (Doc. 23-1 at 65)).  He identified the topic as "Threats by Cellmate" and wrote that his new cell mate – who is younger and muscular – was intimidating and threating him, that he feared assault day and night, and that he needs help; Feldmeier requested that either he or his cell mate be moved (*id.*; Doc. 23, DSOF ¶ 65; Doc. 26, PSFR ¶ 65).  He submitted the Form 22 to Hauser on September 26, 2011, and, that same day, Hauser signed it to acknowledge receipt and forwarded it to Williams for a response (DSOF ¶¶ 65-66; PSFR ¶¶ 65-66).

Under Operational Procedure #627, which was in effect at the time and which outlined the procedures for processing a Form 22, Williams had 3 days, or until September 29, 2011, to respond to Feldmeier's Form 22 (DSOF ¶ 67; PSFR ¶ 67).  There was no response by September 29, 2011 (DSOF ¶ 68; PSFR ¶ 68).

As mentioned, the LPCC Inmate Handbook directed that if the informal process does not provide a resolution of the complaint, the inmate may use the CDCR 602 process (Doc. 23, Ex. A-6 (Doc. 23-1 at 52)).  Feldmeier did not file a subsequent CDCR Form 602 related to his request in the Form 22 (DSOF ¶¶ 70-71; PSFR ¶¶ 70-71).

On October 5, 2011, Feldmeier was assaulted by his cell mate (DSOF ¶ 11; PSFR ¶ 11).  That same day, Feldmeier's request to move to a new cell was granted (Doc. 25 at 4).

After the assault, Feldmeier submitted two CDCR Form 602 Appeals: one sought compensation for property that was lost between the assault date and his return from the

hospital, and one complained about untimely commissary deliveries (DSOF ¶ 62; PSFR ¶ 62). Feldmeier did not submit any CDCR Form 602 Appeals related directly to the assault or Defendants' alleged failure to protect Feldmeier (DSOF ¶ 61; PSFR ¶ 61).

**D.   Discussion**

There is no dispute that Feldmeier failed to submit a CDCR Form 602 related directly to the assault or Defendants' alleged failure to protect him. For this reason, Defendants contend that Feldmeier failed to exhaust administrative remedies (Doc. 22 at 8-11). Feldmeier asserts that he initiated the grievance/appeal process with his Form 22, and then he received the relief he sought – a move to a new cell; he argues that there was nothing left to appeal and remedies were effectively exhausted (Doc. 25 at 3-4).

The Ninth Circuit has held that a prisoner does not have to press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review. *Brown*, 422 F.3d at 935. Thus, completion of every step in the 602 process was not necessary to satisfy the exhaustion requirement if Feldmeier's complaint was resolved at the initial Form 22 level. The question here is whether Feldmeier's Form 22 complaint sufficiently relates to his failure-to-protect claim in this action. Defendants maintain that Feldmeier's Form 22 was a request for a cell change and did not raise the issue of an alleged failure to protect (Doc. 28 at 5).

Even though Feldmeier submitted his Form 22 before the October 2011 assault, arguably his complaint could have encompassed a failure-to-protect allegation. But a review of his Form 22 reflects that he complained only of a threatening cell mate, that it was an increasing problem, that he feared an assault, and that he therefore sought help in finding either him or his cell mate a new cell (Doc. 23, Ex. A-9 (Doc. 23-1 at 65)). Feldmeier did not state that he had been telling Hauser for months about threats made by his cell mate or that he had met with Williams; in fact, Feldmeier did not state that he had informed anyone of the increasing threats (*see id.*).

One of the primary purposes of exhaustion is to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a

federal case." *Woodford*, 548 U.S. at 93 (quoting *Nussle*, 534 U.S. at 525); *see Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution").  To facilitate this, a grievance must "alert[] the prison to the nature of the wrong for which redress is sought."  *Griffin*, 557 F.3d at 1120.  The level of specificity required in a grievance "must come from the prison regulations prescribing the grievance process for that prison."  *Nunez v. Duncan*, 591 F.3d 1217, 1224 (citing *Jones*, 549 U.S. at 217-19).  As set forth previously, the CDCR regulations that govern this case require a prisoner to "describe the specific issue under appeal" and to identify "all staff member(s) involved[.]"  Cal. Code Regs. tit 15, §§ 3084.2(a), 3084.2(a)(3).

The Court finds that Feldmeier's Form 22 did not provide sufficient information to put prison officials on notice of the length of time his cell mate had posed a threat and that Hauser or Williams or any other officers were aware of the threat but failed to take any action.  In other words, his Form 22 did not describe the specific issue underlying his claim in this action, nor did it identify the staff members involved.  Absent such information, prison officials did not have the opportunity to address a complaint related to an alleged failure to protect.  Feldmeier's Form 22 therefore cannot satisfy the exhaustion requirement for his failure-to-protect claim against Hauser and Williams, and Defendants' Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 22).

(2)     Defendants' Motion for Summary Judgment (Doc. 22) is **granted**; Plaintiff Feldmeier's Complaint is dismissed without prejudice for failure to exhaust administrative remedies.

//

//

//

- 9 -

1    (3)    The Clerk of Court must enter judgment accordingly and terminate the

2  action.

3    Dated this 16th day of December, 2014.

4

5

6

7  _____

8              David G. Campbell
          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28