SH

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald M. Feldmeier,<br><br>    Plaintiff,<br><br>v.<br><br>P. Hauser, et al.,<br><br>    Defendants. | No. CV 13-02027-PHX-DGC (BSB)<br><br>**ORDER** |

Plaintiff Ronald M. Feldmeier, who is currently confined in Correctional Training Facility in Soledad, California, brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendants move for summary judgment, and Plaintiff opposes.[1] (Docs. 69, 74.) The Court will grant Defendants' Motion for Summary Judgment and terminate the action.

**I.    Background**

In his single-count Complaint, Plaintiff sued La Palma Correctional Center (LPCC)[2] Case Manager P. Hauser, LPCC Unit Manager R. Williams, and Unknown Call Box Staff for injuries he sustained when he was assaulted by his cellmate on October 5, 2011. (Doc. 1.) On screening under 28 U.S.C. § 1915A(a), the Court determined that

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 71.)

[2] LPCC is a private correctional facility in Eloy, Arizona that is owned and operated by CoreCivic pursuant to a contract with the Arizona Department of Corrections. (Doc. 70 (Defs.' Statement of Facts) ¶ 1.)

Plaintiff stated an Eighth Amendment failure-to-protect claim against Defendants Hauser and Williams and directed them to answer. (Doc. 9.) The Court dismissed the remaining Defendant. (*Id.*)

**II.     Legal Standards**

    **A.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and

draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Failure to Protect

Under the Eighth Amendment, prison officials must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have an affirmative duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 832. A prison official's failure to protect an inmate from attacks by other inmates violates the Eighth Amendment only when two elements are met: (1) the objective element, which requires a prisoner to show that the complained of conditions posed a "substantial risk of serious harm"; and (2) the subjective element, which requires a prisoner to show that the defendant was deliberately indifferent to that risk. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)). A prison official is deliberately indifferent "if he knows that inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 844.

Under the objective prong, "[w]hat is necessary to show sufficient harm for the purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). For a failure-to-protect claim, a plaintiff must show that he was placed into conditions that posed a substantial risk of serious harm. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A prisoner need not wait until he is actually assaulted to bring an Eighth Amendment claim, *see Farmer*, 511 U.S. at 845; however, "[g]eneral intimidation, harassment, and nonspecific threats . . . do not demonstrate a constitutionally intolerable risk of harm." *Chandler v. Amsberry*, No. 3:08-CV-00962-SI, 2014 WL 1323048, at *7 (D. Or. March 28, 2014) (citing cases).

The subjective prong requires "more than ordinary lack of due care for the prisoner's interest or safety." *Farmer*, 511 U.S. at 835 (quotation omitted). To prove

deliberate indifference, a plaintiff must show that the official knew of and disregarded an excessive risk to inmate safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. *Id.* at 837. A plaintiff bringing a failure-to-protect claim need not show that the defendant acted or failed to act believing that harm would actually befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. To prove knowledge of the risk, the plaintiff may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Id.*

In the context of a failure-to-protect claim, deliberate indifference "does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault," but it does require that the official "have more than a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986) (citations omitted). Negligence and even gross negligence are not enough to amount to an Eighth Amendment violation. *Farmer*, 511 U.S. at 835. Deliberate indifference is not shown by merely stating that a defendant should have known of a risk; "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" in violation of the Eighth Amendment. *Id.* at 838.

In addition, a plaintiff alleging deliberate indifference must "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).

Finally, prison officials who actually knew of a substantial risk to inmate health or

safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Prison officials do not escape liability, however, if the evidence shows that that they "merely refused to verify underlying facts that [they] strongly suspected to be true, or declined to confirm inferences of risk that [they] strongly suspected to exist." *Id.* at 843 n.8.

**III. Relevant Facts**

Prisoner Mark Wilson arrived at LPCC on June 4, 2011. (Doc. 70 ¶ 4.) Plaintiff was transferred to LPCC on June 21, 2011. (*Id.* ¶ 3.) Both Plaintiff and Wilson were Special Needs Yard prisoners, also known as Protective Custody prisoners. (*Id.* ¶ 5.) "Wilson was younger than Plaintiff and very muscular." (*Id.* ¶ 7.) Plaintiff and Wilson were housed together on July 8, 2011. (*Id.* ¶ 9.)

According to Plaintiff's facts, in July 2011, Plaintiff spoke to Defendant Hauser about Wilson's use of physical intimidation against him and asked Defendant Hauser to move one of them to another cell, but Defendant Hauser denied Plaintiff's request to move cells and told Plaintiff to let him know if the situation got worse. (Doc. 1 at 3; Doc. 74 (Pl.'s Statement of Facts) ¶ 64.) On August 20, 2011, Plaintiff informed Defendant Hauser that Wilson's behavior had gotten worse and asked to be moved a different cell, but Defendant Hauser responded that there were no bunks open. (Doc. 74 ¶ 69.) In September 2011, Plaintiff informed Defendant Hauser that Wilson had threatened to kill him, but Defendant Hauser again stated that there were no bunks open and sent Plaintiff away. (Doc. 1 at 4; Doc. 74 ¶ 72.)

Plaintiff spoke to Defendant Williams on September 21, 2011 about Wilson's threat to kill him, and Defendant Williams told him to submit a complaint in writing on a Form 22. (Doc. 1 at 4; Doc. 74 ¶ 73.) On either September 22 or September 26, 2011, Plaintiff submitted a Form 22 that stated the following:

> My cellmate [redacted] is 35 years old and very muscular. I am 60 years old, and not… He regularly uses physical intimidation and threats of violence against me, over truly trivial matters. His rages create an atmosphere of distrust and fear of assault for me, day and night. This is an increasingly

> acute problem, despite my own best efforts to avoid confrontation and unnecessary interaction with him. I need your help at this time, in finding one of us another cellmate.

(Doc. 70-1 at 7 (Defs.' Ex. 1, Attach. A).)

According to Defendants' facts, Defendant Hauser "did not understand the information provided in the Form 22 to present an imminent threat of harm to [Plaintiff], as there was no information regarding any specific threats made by Wilson to [Plaintiff], or any incidents in which Wilson laid hands on [Plaintiff]." (Doc. 70-2 ¶ 10.) Defendant Williams also did not interpret "the information provided in the form [to] demonstrate[] an imminent threat of harm to [Plaintiff], as there were no specific threats by Wilson to [Plaintiff] documented in the Form 22." (Doc. 70-1 ¶ 11.) Defendant Williams delegated the matter to Defendant Hauser to speak with both prisoners and make a recommendation as to what should be done. (Doc. 70 ¶ 23.)

Plaintiff states that he spoke to Defendant Hauser again on September 24 and 26, 2011 and informed him of Wilson's escalating threats of violence, and Defendant Hauser responded that a decision on Plaintiff's Form 22 had not been made yet and again denied Plaintiff's request for a cell change. (Doc. 1 at 4; Doc. 74 ¶ 77–78.)

On September 26, 2011, Defendant Hauser spoke to Plaintiff and Wilson regarding Plaintiff's Form 22. (Doc. 70-2 ¶¶ 12, 19−20.)[3] Based on his conversation with Plaintiff, Defendant Hauser determined that Plaintiff did not face a specific, imminent threat of harm from Wilson that would necessitate an immediate cell change. (*Id.* ¶ 12.) Defendant Hauser does not recall Plaintiff ever saying that he feared for his life. (*Id.* ¶ 16.) During this conversation, Defendant Hauser told Plaintiff that he could move him, but it would take a few days because there were no other cells available in the unit at that time. (Doc. 70 ¶ 33.) During his conversation with Wilson, Defendant Hauser "did not see or hear anything from Wilson that caused [him] to believe [Plaintiff] was in imminent danger." (Doc. 70-2 ¶ 20.)

---

[3] Plaintiff disputes that Defendant Hauser spoke to Wilson, but his objection is not based on personal knowledge and will be disregarded. (*See* Doc. 74 ¶ 34.)

- 6 -

| | |
|---|---|
| 1 | Defendant Hauser states that, at this point, his "understanding of the situation was that [Plaintiff] did not feel comfortable with Wilson, and that he and Wilson did not get along." (Doc. 70-2 ¶ 13.) After he spoke to Plaintiff and Wilson, Defendant Hauser informed Defendant Williams that he did not think either Plaintiff or Wilson needed to be moved immediately, and they "would be okay waiting for regular cell moves to occur, which would happen in a few days." (Doc. 70 ¶ 37.) With respect to prisoners' requests for cell changes, Defendant Hauser asserts that "[i]t was not uncommon for cellmates to not get along sometimes[,]" and "it is standard industry practice to not move inmates every time one inmate is not comfortable with his cellmate . . . and to only make such moves when there is a threat of imminent danger." (*Id.* ¶¶ 14−15.) |

Defendant Hauser states that, at this point, his "understanding of the situation was that [Plaintiff] did not feel comfortable with Wilson, and that he and Wilson did not get along." (Doc. 70-2 ¶ 13.) After he spoke to Plaintiff and Wilson, Defendant Hauser informed Defendant Williams that he did not think either Plaintiff or Wilson needed to be moved immediately, and they "would be okay waiting for regular cell moves to occur, which would happen in a few days." (Doc. 70 ¶ 37.) With respect to prisoners' requests for cell changes, Defendant Hauser asserts that "[i]t was not uncommon for cellmates to not get along sometimes[,]" and "it is standard industry practice to not move inmates every time one inmate is not comfortable with his cellmate . . . and to only make such moves when there is a threat of imminent danger." (*Id.* ¶¶ 14−15.)

Plaintiff states that he spoke to Defendant Hauser again on October 4, 2011 to inform him of Wilson's continued threats of violence, and Defendant Hauser said he would talk to Wilson about it and then walked away. (Doc. 74 ¶ 81.) On October 5, 2011, Plaintiff and Wilson were involved in a physical altercation. (Doc. 70 ¶¶ 51, 54; Doc. 74 ¶¶ 86−89.) Defendants were not present during the altercation between Plaintiff and Wilson. (*See* Doc. 70 ¶ 57; Doc. 70-1 ¶ 17; Doc. 70-2 ¶ 22.) Plaintiff states that he sustained several injuries during the altercation including facial fractures and lacerations, rib fractures, hearing loss, and tissue damage in his forearms and wrists. (Doc. 1 at 5.)

Defendant Hauser states that he "was not aware of any problems between [Plaintiff] and Wilson between July 8 and September 26, 2011 and denies speaking to Plaintiff about his issues with Wilson prior to September 26, 2011 or between September 26, 2011 and October 5, 2011. (Doc. 70-2 (Hauser Decl.) ¶¶ 8, 21.) Defendant Williams states that he "do[es] not specifically recall speaking to [Plaintiff] on September 21, 2011 . . . or the details of any conversation we may have had." (Doc. 70-1 (Williams Decl.) ¶ 9.)

///
///
///

**IV. Discussion**

**A. Objective Prong**

Construing the facts in Plaintiff's favor, Plaintiff's assertions regarding Wilson's threats of violence against him and the October 5, 2011 altercation are sufficient to create a genuine issue of material fact as to whether Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm," and therefore preclude summary judgment on the objective prong of Plaintiff's Eight Amendment claim. *Farmer*, 511 U.S. at 834.

**B. Subjective Prong**

The subjective inquiry involves two parts. First, Plaintiff "must demonstrate that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk to [Plaintiff's] safety." *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013) (citing *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)); *see Farmer*, 511 U.S. at 842 (whether a prison official knew of a substantial risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"). A prisoner may face a substantial risk of inmate attack either "for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843. Second, Plaintiff "must show that there was no reasonable justification for exposing [him] to the risk." *Lemire*, 726 F.3d at 1078. The Ninth Circuit has stated that these two inquiries "are fact-intensive and typically should not be resolved at the summary judgment stage." *Id.*

**1. Substantial Risk**

On the above facts, there is a genuine issue of material fact as to whether Defendants were aware of a substantial risk to Plaintiff's safety. It is undisputed that on or about September 26, 2011, Plaintiff submitted a Form 22 stating that his cellmate Wilson was regularly threatening him with violence and that Plaintiff was in fear of an assault. (Doc. 70-1 at 7 (Defs.' Ex. 1, Attach. A).) Defendants were both aware of

Plaintiff's Form 22 and its contents. (Doc. 70-2 ¶ 10; Doc. 70-1 ¶ 11.)

Additionally, Plaintiff has presented evidence that he spoke with Defendants multiple times between July 2011 and October 2011 regarding Wilson's threats of violence and threats to kill him. (Doc. 74 ¶¶ 64, 69, 72–73, 77–78.) Defendant Williams' inability to "specifically recall" whether he spoke to Plaintiff on September 21, 2011 does not disprove Plaintiff's claims. (Doc. 70-1 ¶ 9.) Failure to remember factual information, like having a "belief" in factual information, is insufficient because it does not show personal knowledge. *See Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412-13 (9th Cir. 1995) (declaration on information and belief is entitled to no weight where declarant lacks personal knowledge). Defendant Hauser denies speaking to Plaintiff prior to September 26, 2011 and between September 26, 2011 and October 5, 2011, but the Court must resolve factual disputes in Plaintiff's favor. Doing so, the Court finds that a reasonable jury could find that Plaintiff's Form 22, submitted on September 22, 2011, and his repeated complaints to Defendants in August and September 2011 concerning Wilson's threats of violence, were sufficient to make Defendants aware of a substantial risk to Plaintiff's safety.

### 2. Reasonable Justification

Analysis of the subjective prong next requires the Court to examine whether there was any reasonable justification for exposing Plaintiff to the risk and whether Defendants responded reasonably to the risk. *See Lemire*, 726 F.3d at 1078. Deliberate indifference is evaluated in this context by considering "whether, in allegedly exposing the prisoner to danger, the defendant prison official(s) were guided by considerations of safety to other inmates, whether the official(s) took 'prophylactic or preventive measures' to protect the prisoner, and whether less dangerous alternatives were in fact available." *Berg*, 794 F.2d at 462 (quoting *Bell v. Wolfish*, 441 U.S. 520, 546, 547-48 (1979)). "Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Bell*, 441 U.S. at 547-548. In

*Berg*, the Ninth Circuit affirmed summary judgment for prison officials who investigated a threat to the inmate's safety, stating that "[i]f the evidence only involves a dispute over the . . . existence of arguably superior alternatives . . . the plaintiff has not met his burden and the case should not be submitted to a jury." 794 F.2d at 460, 462. Likewise, in *Slone v. Arizona Department of Corrections*, the Ninth Circuit affirmed summary judgment against an inmate who claimed that the defendants acted with deliberate indifference because they denied his protective segregation request "when they investigated his requests and transferred him to a different prison unit as an alternative to placing him in protective segregation." 308 Fed. App'x 110, 2009 WL 118952 at *1 (9th Cir. Jan. 13, 2009).

An official who claims that he was unaware of the risk to an inmate cannot escape liability if the evidence shows that he failed to verify the underlying facts or failed to investigate a risk he suspected to exist. *Farmer*, at 843 n. 8. But that is not the case here. In response to Plaintiff's Form 22, Defendant Hauser, as delegated by Defendant Williams, investigated Plaintiff's concerns regarding Wilson by talking to Plaintiff and Wilson separately. (Doc. 70 ¶ 23; Doc. 70-2 ¶¶ 12, 19−20.) Based on these conversations, Defendant Hauser determined that there was no imminent threat to Plaintiff's safety. (Doc. 70-2 ¶¶ 12, 20.) Defendant Hauser's decision was based on what he viewed as a lack of credible evidence demonstrating a threat to Plaintiff's safety.

The law permits an official charged with knowledge of a risk to show that he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. An official who attempts to verify underlying facts and confirm whether a risk of harm exists generally does not act with deliberate indifference. *See id.* at 843 n. 8. Here, Defendants investigated Plaintiff's allegations; they did not simply disregard a risk to his safety. Defendants were unable to corroborate any specific threat. (Doc. 70-2 ¶¶ 12−13, 20.) Without further evidence of an imminent threat to Plaintiff, Defendant Hauser concluded that a cell change was not immediately necessary to protect Plaintiff from harm, and reported his findings to Defendant Williams. (Doc. 70 ¶ 37; Doc. 70-2 ¶¶

12−13, 20.)  It is undisputed that, during their September 26, 2011 conversation, Defendant Hauser informed Plaintiff that he could be moved when a cell became available in the unit in a few days.  (Doc. 70 ¶ 33.)

On this record, the Court finds that Plaintiff has failed to present sufficient evidence for a reasonable jury to find that Defendants lacked reasonable justification for their decision not to move Plaintiff or Wilson from the cell immediately.  Plaintiff argues that Defendants made the wrong judgment call – that they failed to give proper weight to his concerns about Wilson.  But the Court must defer to prison officials on judgment calls. *Bell*, 441 U.S. at 547-548.  Defendants cannot be held liable simply for making a mistake.  Plaintiff may strongly disagree with Defendants' denial of his request for a cell change, but he has not presented evidence to show that their decision was due to deliberate indifference.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 69).

(2) Defendants' Motion for Summary Judgment (Doc. 69) is **granted**, and the action is terminated with prejudice.  The Clerk of Court must enter judgment accordingly.

Dated this 12th day of October, 2018.

*David G. Campbell*
David G. Campbell
Senior United States District Judge